DANIEL F. McMAHON, as Sheriff of the County of Westchester, Appellant-Respondent, v. EDWIN G. MICHAELIAN, as County Executive of the County of Westchester, et al., Respondents-Appellants.

Second Department, December 6, 1971.

*Keegan & Keegan* (*John W. Keegan* of counsel), for appellant-respondent.

*John J. S. Mead, County Attorney* (*George S. Donaldson, Eugene E. Russell* and *John J. Sherlock* of counsel), for respondents-appellants.

*Edward G. Dillon* for New York State Sheriffs' Association, *amicus curiae.*

SHAPIRO, J. Plaintiff, the Sheriff of Westchester County, commenced this action to obtain a declaration of the invalidity of Local Law No. 3-1971 of Westchester County. That law places the position of *all* deputies, officers and employees of the Sheriff of Westchester County, except the appointed Undersheriff, into the classified civil service and " covers " into the classified civil service those appointees who have been incumbents for at least one year.

The Special Term held that the local law is invalid to the extent that it placed within the classified civil service persons employed in the Sheriff's office who performed any civil duties, but that it was valid to the extent that it mandated that those employees performing duties only in the criminal branch of the Sheriff's office be subject to civil service.

Both the Sheriff and the defendants disagree with and appeal from that determination. The Sheriff contends that since section 13 of article XIII of the New York State Constitution provides that " the county shall never be made responsible for the acts of the sheriff " he is personally responsible for the acts of his subordinates and that therefore he, and he alone, without interference by civil service procedures, has the right to appoint all of the personnel of his office. The defendants, on the other hand, contend that the Special Term was in error when it limited the applicability of Local Law No. 3-1971 to the employees of the

Sheriff's office whose duties relate solely to the enforcement of criminal matters. I agree with the defendants' contention that the local law is a valid and legal enactment in its entirety.

We must give full heed and a liberal interpretation to the public policy expressed in section 6 of article V of our State Constitution that " appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examination which, so far as practicable, shall be competitive," but in doing so we may not disregard the mandate of section 13 of article XIII of the Constitution.

Our obligation in deciding the dispute between the parties is to reconcile these seemingly conflicting provisions of the Constitution without doing violence to either (cf. *Matter of Guardian Life Ins. Co. of Amer.* v. *Chapman*, 302 N. Y. 226).

In 1908, when the Court of Appeals decided *Matter of Flaherty* v. *Milliken* (193 N. Y. 564), the provisions of the State Constitution above set forth were (except for number changes) the same as they are now. In determining that those appointees of the Sheriff who discharged duties relating to civil process were in the service of the Sheriff personally and hence did *not* fall within the purview of the civil service provisions of the Constitution and that those employees performing services in the criminal division of the Sheriff's office were subject to the civil service provisions of the Constitution and implementing statutes, the court said (p. 569) : " We think that the relation which the appointees of the sheriff bears to that officer in the discharge of the criminal duties of the office differs essentially from that borne in the discharge of the civil duties of the office. While in some cases the sheriff may be punished by way of contempt for the default of his appointees in criminal proceedings, as a rule he is subject to such punishment only where to some extent he has been personally responsible for the default; the relation of the parties is not strictly that of principal and agent, nor does the doctrine of *respondeat superior* apply.* * * We think, therefore, that all appointees of the sheriff whose duty relates exclusively to the functions of the sheriff's office in criminal matters should be considered in the service of the public and not of the sheriff personally, and are subject to civil service regulations."

Thereafter in *Matter of Grifenhagen* v. *Ordway* (218 N. Y. 451), decided in 1916, when, as to an employee exercising civil duties, the court was urged to reverse its determination in *Matter of Flaherty*, it said (pp 457–458) : " The counsel for the

respondents and for the intervenors urge earnestly, even vehemently, that we should reverse the *Flaherty* case, in compliance with the demands of public opinion as indicated to exist in the Civil Service Law and the regulations and reports of the civil service commission. The demands of public opinion are voiced more accurately by legislative enactments than by the assertions and arguments of counsel or the reports of the commission. The *Flaherty* case, as we have stated, was decided in 1908. In it we said: '*It may also be that the legislature might by an appropriate statute change the nature of the relation between the sheriff and his appointees so that the latter would no longer be strictly agents of the former but independent public officers liable for misconduct directly to any one injured by the same. Assuming, however, such power in the legislature, no such intent should be ascribed to a statute except where such intent is very plainly indicated.* It would throw the whole law upon the subject of the liability of a sheriff and his deputies or his appointees as it has existed for centuries into confusion, and make one rule applicable in one county and another rule in another.' (p. 569.) The integrity and operation of the decision in the *Flaherty* case have not been affected by any statute. The legislature has not deemed it necessary or wise to abrogate it; rather, by its silence it has approved and acquiesced in the soundness and reality of the principles upon which it was decided " (emphasis supplied).

It is thus crystal clear that the appointees of the Sheriff who do not exercise civil functions may be placed into the classified civil service. The issue therefore is whether, as to Westchester County, the Legislature has altered the nature of the relationship between the Sheriff and his appointees, or, in the language of *Flaherty (supra,* p. 567), whether such appointees " are, as far as they discharge the duties of the sheriff relating to civil process, in the service of the county or in the service of the sheriff personally ". In *Flaherty* the court noted that those of the Sheriff's appointees who were in the service of the county, i.e., those deputies performing these services on the criminal side of the Sheriff's office, were covered by the relevant constitutional and statutory provisions relating to civil service.

In my opinion the basic nature of the relationship between the Sheriff and his appointees has been fundamentally altered in Westchester County by virtue of a State legislative enactment, to wit: the Westchester County Administrative Code (L. 1948, ch. 852). Section 345 of that code provides: " Any act or omission of any employee of the county in the office of the sheriff, done or made in the performance of an official duty or for the

performance of which the county is paid or receives compensation or fee, shall be the act or omission of the county and the damages, if any, resulting therefrom shall be deemed the liability of the county.

"Nothing contained in this section shall make the county responsible for the acts of the sheriff thereof, nor relieve said sheriff from any liability to which he is lawfully subject."

This code provision clearly places the appointees of the Sheriff in the service of the county. In so doing it has removed the underpinnings of the *Flaherty* and *Grifenhagen* decisions and has effectively erased the distinction between appointees who exercise civil functions and those who exercise criminal functions. As all such appointees in Westchester County are, by virtue of the code, in the service of the county, they are all subject to civil service classification, provided only that section 345 of the code is not in conflict with section 13 of article XIII of the State Constitution. I believe that the code provision and the constitutional mandate are in harmony.

Section 345 of the code strictly complies with section 13 of article XIII of the Constitution. Its first paragraph imposes liability upon the county for acts of the Sheriff's appointees committed in the discharge of their official duties and its second paragraph merely restates the constitutional direction that the county not be made responsible for the acts of the Sheriff. The assumption by Westchester County of liability for the acts of the employees of the Sheriff is not prohibited by the Constitution, which merely mandates that a county "shall never be made responsible for the acts of the sheriff," for under the provisions of the code he still continues to be responsible for *his* acts.

Since by the provisions of section 345 of the code the Sheriff's appointees are placed in the service of the county rather than in the service of the Sheriff personally, we should not by a wooden construction of section 13 of article XIII dilute the salutary provision of section 6 of article V which requires such persons to be appointed and promoted "according to merit and fitness to be ascertained, so far as practicable, by examination which, so far as practicable, shall be competitive."

Paragraph (b) of subdivision 1 of section 41 of the Civil Service Law, which exempts deputies of principal executive officers from civil service, clearly has no application to Sheriff's deputies (except for the Undersheriff), since such deputies are not authorized to act generally for and in place of their principal (see *Amico* v. *Erie County Legislature,* 36 A D 2d 415, and cases cited therein).

Similarly, section 652 of the County Law, which confers upon a Sheriff the power to appoint deputies and other employees, many of whom serve at his pleasure, does not invalidate this Local Law 3–1971. The predecessor of section 652 (former § 182) was in effect at the time of the *Flaherty* and *Grifenhagen* decisions and was not then considered a bar to the inclusion, within the ambit of the civil service provisions of the Constitution, of those deputies performing exclusively criminal duties. Further, the applicable civil service provisions affect the manner and mode of hiring and firing rather than the right of the Sheriff to hire and fire (cf. *Matter of Seeley* v. *Stevens,* 190 N. Y. 158). Hence, Westchester County Local Law 3–1971 is not in conflict with section 652 of the County Law.

We have considered the other contentions raised by the Sheriff in his brief and find them to be without merit.

The order and judgment therefore should be modified, on the law, by declaring that Westchester County Local Law 3–1971 is legal and valid in its entirety and should be affirmed as so modified, without costs.

MUNDER, Acting P. J., LATHAM, CHRIST and BENJAMIN, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Westchester County, dated July 21, 1971, modified, on the law, (1) by striking from the third decretal paragraph thereof the words " legal and valid in so far as it relates to deputy sheriffs performing only criminal functions " and by substituting therefor the following: " in its entirety "; and (2) by striking therefrom the fourth decretal paragraph. As so modified, order and judgment affirmed, without costs.